ROBERT A. PINEL, ESQ. – RP9070
FLAMM, BOROFF & BACINE, P.C.
Westfield Corporate Center
4905 West Tilghman Street, Suite 310
Allentown, Pennsylvania 18064
610-336-6800
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHARLES G. LIEF | Case No. **07 CIV. 6232** |
| Plaintiff, | COMPLAINT FOR DAMAGES |
| v. | |
| GREYSTON FOUNDATION, INC., | **JUDGE CONNER** |
| Defendant. | |

Plaintiff Charles G. Lief, by way of complaint against the Defendant Greyston Foundation, Inc. ("Greyston" or "Defendant"), says that:

### PRELIMINARY STATEMENT

1. This case involves the failure of Defendant to comply with the terms of a July 1, 2003 Consulting/Post-Employment Financial Agreement (the "Agreement") requiring Defendant to pay Plaintiff $144,000 in increments of $6,000 per month. Plaintiff seeks payment of $78,000 that remains due under this Agreement, interest from June 2004, and payment of all fees, including attorney's fees, costs of this litigation, and where appropriate, the assessment of statutory penalties and punitive/exemplary damages.

2. Defendant defaulted under the Agreement by failing to make the payment due in June 2004. It has not made any payments since June 2004.



3. In November 2005, Plaintiff and Defendant reached an accord ostensibly modifying the payment terms of the Agreement (the "Accord") requiring payments to resume in March 2006 at a rate of $2,500 per month. The Accord is a nullity and void. No payments have ever been made under it.

## JURISDICTION AND VENUE

4. Jurisdiction of the parties and this Complaint is properly in this Court under the diversity of jurisdictions provisions of 28 U.S.C. §1332(a)(1) and (b).

5. There is complete diversity between the parties. Every issue of law and fact in this action is wholly between a citizen and citizen corporation of different states. The amount in controversy exceeds $75,000.00.

6. Venue is proper as to this Defendant pursuant to 28 U.S.C. §1391(a)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

7. Venue is also proper in this district pursuant to the provisions of 28 U.S.C. §1391(c) because Defendant is subject to personal jurisdiction in this district and is deemed to reside within it for purposes of 28 U.S.C. §1391(a)(1).

## PARTIES

8. Defendant is and was at all times mentioned below, a not for profit corporation duly organized and existing under the laws of the State of New York with its principal place of business at 21 Park Avenue, Yonkers, New York 10703.

9. Plaintiff is a resident of the State of Vermont, with an address of 38 Tuckaway Pond Lane, Colchester, Vermont 05446.

## **STATEMENT OF FACTS**

10. Plaintiff was Defendant's Chief Executive Officer for a number of years. In July 2002, Plaintiff informed Defendant's Board of Directors that he would be leaving Defendant's employ within the next year. Plaintiff's departure from Defendant was voluntary and was not required or sought by Defendant.

11. As part of the separation negotiations, the parties entered into the Agreement. Final terms were reached on July 1, 2003. Acceptance and the terms of the Agreement are set forth in a July 1, 2003 e-mail from Mr. Art Murphy, Executive Managing Director, to Plaintiff. (A copy of this e-mail is attached as Exhibit A.)

12. Under the terms of the Agreement, Defendant was to pay Plaintiff $6,000 per month for 24 months, for a total payment of $144,000. Additionally, Plaintiff would consult with Defendant and provide advice in the areas specified in the e-mail.

13. The parties did not enter into a formal written contract, but, as per the terms of the Agreement, on July 1, 2003, Defendant began paying Plaintiff $6,000 per month.

14. Plaintiff stopped making payments under the Agreement in June 2004. At that time, Defendant had paid $66,000 of the $144,000. The additional $78,000 remains unpaid and due.

15. Plaintiff demanded payment of the remaining $78,000. In response, Defendant admitted that it owed the remaining $78,000 but wanted to modify the payment terms of the Agreement.

16. The Accord was executed in November 2005 modifying the payment terms of the Agreement. (A copy of the Accord is attached as Exhibit B.)

17. Under the terms of the Accord, Defendant acknowledged that $78,000 remained due under the Agreement and was to be paid at $2,500 per month. Payments were to begin on March 1, 2006. No consideration was given under the Accord.

18. On March 1, 2006, the date payments were to begin under the Accord, Defendant failed and refused to pay Plaintiff. Defendant refused to pay, claiming that it was unable to "meet its loan obligations to its lenders."

19. Per the terms of the Accord, Plaintiff requested confirmation from Defendant's outside auditors that Defendant was "unable to meet its loan obligations."

20. The outside auditors did not confirm that Defendant was "unable to meet its loan obligations."

21. Defendant continues to refuse to pay Plaintiff the $78,000 remaining due under the Agreement.

## FIRST COUNT
### (BREACH OF CONTRACT)

22. Paragraphs 1 - 21 of this Complaint are incorporated herein by reference.

23. Defendant has failed and refused to pay the amounts due under the parties' contract despite Plaintiff's demand for payment.

24. Plaintiff performed all his obligations under the parties' contract.

25. As a result of Defendant's failure to pay the amounts due under the parties' contract, Plaintiff has been damaged in an amount not less than $78,000, as well as interest, fees and costs, including attorney's fees.

**WHEREFORE**, Plaintiff respectfully requests that judgment issue:

a) against Defendant in an amount in excess of $78,0000 in an amount to be proven at trial;

b) requiring Defendant to pay all fees and costs incurred by Plaintiff in initiating and pursuing this litigation, including any and all attorney's fees; and

c) for any and all such relief to which Plaintiff is entitled at law or at equity.

## SECOND COUNT
### (WAGE AND HOUR VIOLATION)

26. Paragraphs 1 - 25 of this Complaint are incorporated herein by reference.

27. Defendant has failed to pay Plaintiff wages due and owing to Plaintiff.

28. Under the law of the State of New York, payments due and owing under a post-employment financial agreement are wages and subject to the wage and hour laws of the State of New York.

29. As a result of Defendant's failure to pay the amounts due to Plaintiff, Plaintiff has been damaged in an amount not less than $78,000.

30. As a result of Defendant's failure to pay the amounts due to Plaintiff, Plaintiff is entitled to interest from Defendant on all wages adjudged to be due and owing, as well as statutory penalties that should be assessed against Defendant. Defendant should also be required to pay all of Plaintiff's attorney's fees incurred in bringing and pursuing this action.

**WHEREFORE**, Plaintiff respectfully requests that judgment issue:

a) against Defendant in an amount in excess of $78,000 in an amount to be proven at trial, as well interest and penalties;

b) requiring Defendant to pay all fees and costs incurred by Plaintiff in initiating and pursuing this litigation, including but not limited to all attorney's fees; and

c). for any and all such relief to which Plaintiff is entitled at law or at equity.

## THIRD COUNT
## (FRAUD)

31. Paragraphs 1-30 are incorporated herein by reference.

32. Defendant sole motive in inducing Plaintiff to execute the Accord was to avoid paying to Plaintiff the amounts remaining due under the Agreement.

33. Defendant knew that Plaintiff would reasonably rely upon Defendant's representations, and, Plaintiff did rely upon Defendant's representations. Defendant specifically made the representations to Plaintiff that it would make payment pursuant to the terms of the Accord to induce him to enter into the Accord.

34. Defendant knew at the time that it executed the Accord, and during the time that it was negotiating the terms of the Accord, that it did not intend to make any payments under the Accord.

35. As a result of Defendant's fraud and fraud in the inducement, Plaintiff has been damaged in an amount not less than $78,000, as well as interest and fees and costs, including attorney's fees.

36. Defendant's actions involve a high degree of moral culpability and evidence a wanton disregard implying a criminal indifference to its civil obligations. As such, punitive damages should be assessed against it.

**WHEREFORE**, Plaintiff respectfully requests that judgment issue:

a) against Defendant in an amount in excess of $78,000 in an amount to be proven at trial;

b) assessing punitive damages against Defendant for its actions;

c) requiring Defendant to pay all fees and costs incurred by Plaintiff in initiating and pursuing this litigation, including attorney's fees; and

c) for any and all such relief to which Plaintiff is entitled at law or at equity.

## FOURTH COUNT
### (BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

37. Paragraphs 1 - 37 of this Complaint are incorporated herein by reference.

38. Implied in every contract is the requirement that the parties deal with each other fairly and in good faith.

39. Defendant has failed to deal fairly with Plaintiff under the parties' contract and it has failed to act in good faith.

40. As a result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff has been damaged in an amount not less than $78,000, as well as interest, fees and costs, including attorney's fees.

**WHEREFORE**, Plaintiff respectfully requests that judgment issue:

a) against Defendant in an amount not less than $78,000 in an amount to be proven at trial;

b) requiring Defendant to pay all fees and costs incurred by Plaintiff in initiating and pursuing this litigation, including but not limited to attorney's fees; and

c) for any and all such relief to which Plaintiff is entitled at law or at equity.

## FIFTH COUNT
### (DECEPTIVE PRACTICES)

41. Paragraphs 1-40 are incorporated herein by reference.

42. Defendant's actions were deceptive in the conduct of its business, trade and commerce within the State of New York.

43. As a result of Defendant's deceptive acts, Plaintiff has been damaged in an amount not less than $78,000, as well as interest, and fees and costs, including attorney's fees and statutory penalties.

7

44. Exemplary and punitive damages should be assessed against Defendant. Defendant's actions involve a high degree of moral culpability and evidence a wanton disregard implying a criminal indifference to its civil obligations.

**WHEREFORE**, Plaintiff respectfully requests that judgment issue:

a) against Defendant in an amount in excess of $78,000 in an amount to be proven at trial;

b) assessing exemplary and punitive damages against Defendant for its actions;

c) requiring Defendant to pay all fees and costs incurred by Plaintiff in initiating and pursuing this litigation, including attorney's fees; and

d) for any and all such relief to which Plaintiff is entitled at law or at equity.

**FLAMM, BOROFF & BACINE, P.C.**
**Attorneys for Plaintiff Charles G. Lief**

By: *[signature]*
Robert A. Pinel, Esq.

Dated: July 3, 2007

# EXHIBIT A

**JULY 1, 2003**
From: <Art_Murphy@fac.com>
To: <derekk@greyston.com>; <davids@greyston.org>
Cc: <chuckl@greyston.org>
Sent: Tuesday, July 01, 2003 5:22 PM

**Subject: I will execute and send copies to you**

>
> Charles Lief
> 38 Tuckaway Pond Lane
> Colchester, VT 05446
>
>
> Dear Chuck
>
> I am writing to confirm the post employment financial agreement reached
> between you and Greyston Foundation.
>
> The Executive Committee of the board of directors of the Greyston
> Foundation
> desires to retain your services to Greyston in a consulting capacity in
> order to make full us of your 12 years of experience gained while growing
> the organization and establishing and maintaining relationships in the
> financial, political and non profit sectors. Your availability to the new
> president of Greyston, David Sweeny, and the other senior staff, will be of
> significant value to Greyston.
>
> To that end you and the board executive committee have a agreed to a 24
> month consulting period commencing on July 1, 2003 and concluding on June
> 30, 2005. You have accepted our offer of $6,000 a month for your consulting

> services.Your services will comprise general advice to the president and
> his
> staff, by telephone, e mail or in person meetings as such may be
> accommodated in your schedule, calls or other communications to persons
> outside of Greyston on its behalf and completion of specific projects you
> are now involved with, namely the completion of the new Greyston Bakery,
> the
> launch of VidaCare, and the potential refinancing of the Maitri Center's
> bond financing. Should Greyston desire your assistance in completing
> specific projects such as grant writing, real estate project planning or
> other areas of activity such work will involve a separate negotiation as to
> scope and fee for the services.
>
> This agreement may not be cancelled by Greyston except for gross negligence
> or acts of bad faith on your part. The payment shall be made in advance,
on the first day of each month.
Art Murphy
> Executive Managing Director
> (212) 273-7572
> (212) 273-7358 Fax
> art.murphy@fac.com

**EXHIBIT B**

# SEVERANCE AGREEMENT

**THIS AGREEMENT** effective as of the _____ day of _____, 2005 by and between GREYSTON FOUNDATION, INC. ("Greyston") and CHARLES LIEF ("Lief").

## RECITALS

**WHEREAS**, Lief was employed by Greyston as its Chief Executive Officer from December 1994 to April 4, 2003.

**WHEREAS**, the parties wish to resolve issues relating to the amount and terms of severance payments due Lief;

**NOW, THEREFORE**, in consideration of One ($1.00) Dollar and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties agree as follows:

1. **Total Amount Due/Payments.**
As of the date of this Agreement, the total amount due Lief is Seventy-eight Thousand and 00/100 ($78,000.00) Dollars which shall be paid in monthly installment of Two Thousand Five Hundred and 00/100 ($2,500.00) Dollars commencing March 1, 2006. Interest shall not accrue on the amount due Lief.

2. **Suspension of Payments.**
Greyston's obligation to make payments as aforesaid, is subject to Greyston's financial ability to make such monthly payments. The determination of whether Greyston can continue to make its monthly payments shall be based on its ability to meet its loan obligations to its lenders. If Greyston in its sole discretion concludes that it cannot do so, the payments to Lief shall be suspended until such time, if ever, that Greyston resumes its monthly loan payments. In each such instance, Lief may request Greyston's outside accountants to provide a statement confirming that Greyston is unable to meet its loan obligations. Greyston's signature on this Agreement shall be sufficient authorization to the accountants to issue the above statement and any reasonably requested statement of the status of the loan payments following any suspension.

3. **Termination.**
The New York State Attorney General's Office has conducted an investigation of the Maitri Center, an entity related to Greyston. In the event the Attorney General's Office determines that Lief's conduct, other than as a result of his overall supervision of the Greyston staff, or through

his normal actions as Greyston's CEO, was illegal or gives rise to civil liability, or if the Greyston Board determines through the discovery of facts not now reasonably know to it, that Lief was grossly negligent or acted in bad faith during his tenure as CEO, Greyston will immediately discontinue all payments and all of Greyston's other obligations under this Agreement, including any obligation to make further payments, shall terminate.

4. **Notices.**

Any notice or other communication required or permitted under this Agreement shall be effective only if it is in writing and shall be deemed to have been duly given when delivered personally or seven days after mailing if mailed first class by registered or certified mail, postage prepaid, addressed as follows:

If to Greyston:

Greyston Foundation
21 Park Avenue
Yonkers, NY 10703

Attention:  Steven Brown
President & CEO

And

James J. Veneruso, Esq.
Griffin, Coogan & Veneruso, P.C.
51 Pondfield Road
Bronxville, NY 10708

If to Lief:

Mr. Charles Lief
38 Tuckaway Pond Lane
Colchester, Vermont 05446

or to such other address as any party may designate by notice to the others.

5. **No Obligation to Fund.**

The Agreement of Greyston (or its successors) to make payments to Lief hereunder shall represent solely the unsecured obligation of Greyston (and its successors), except to the extent Greyston (or its successors) in its sole discretion elects in whole or in part to fund its

2

obligations under this Agreement pursuant to a trust arrangement or otherwise.

**6.  Applicable Law.**
This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York.

**7.  Amendment.**
This Agreement may only be amended by a written instrument signed by the parties hereto, which make specific reference to this Agreement.

**8.  Severability.**
If any provision of this Agreement shall be held invalid or unenforceable by any court of competent jurisdiction, such holding shall not invalidate or render unenforceable any other provisions hereof.

**9.  Withholding.**
Greyston shall have the right to withhold any and all local, state and federal taxes which may be withheld in accordance with applicable law.

**IN WITNESS WHEREOF,** Greyston has caused this Agreement to be executed on its behalf by a duly authorized officer and Lief has hereunder set his hand, as of the date first above written.

**GREYSTON FOUNDATION**

BY: _____
Name: Steven Brown
Title: President

_____
Charles Lief

G:\Not-for-Profits\greyston\lief\Severance..10-14-05.fnl.doc

3