Daniel K. Winters (DW 1158)
Jennifer A. Guidea (JG 4397)
REED SMITH LLP
599 Lexington Avenue
New York, New York 10022

*Attorneys for Defendant Greyston Foundation, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHARLES G. LIEF,<br><br>    Plaintiff,<br><br>v.<br><br>GREYSTON FOUNDATION, INC.,<br><br>    Defendant. | Case No.: 07-CIV-6232 (WCC)<br><br>Honorable William C. Connor<br><br><br>**ANSWER, AFFIRMATIVE DEFENSES**<br>**AND COUNTERCLAIMS**<br><br>(FILED ELECTRONICALLY) |

Defendant Greyston Foundation, Inc. ("Greyston") by and through its attorneys Reed Smith LLP, as for its answer to plaintiff Charles G. Lief's ("Plaintiff") Complaint, respond and allege as follows:

**PRELIMINARY STATEMENT**

1. Greyston admits only that it entered into a July 1, 2003 Consulting/Post-Employment Financial Agreement with the plaintiff. Defendant denies all of the remaining allegations set forth in Paragraph 1 of the Complaint.

2. Greyston denies the allegations set forth in Paragraph 2 of the Complaint.

3. Greyston admits only that in November 2005, plaintiff and defendant reached an accord modifying the payment terms of the Agreement. Defendant denies all of the remaining allegations set forth in Paragraph 3 of the Complaint.

## JURISDICTION AND VENUE

4. The allegations set forth in Paragraph 4 state legal conclusions and do not require a response. To the extent a response is required, Greyston denies knowledge and information sufficient to form a belief as the truth of the allegations set forth in Paragraph 4 of the Complaint.

5. The allegations set forth in Paragraph 5 state legal conclusions and do not require a response. To the extent a response is required, Greyston denies the allegations.

6. The allegations set forth in Paragraph 6 state legal conclusions and do not require a response. To the extent a response is required, Greyston denies the allegations.

7. The allegations set forth in Paragraph 7 state legal conclusions and do not require a response. To the extent response is required, Greyston denies the allegations.

## PARTIES

8. Greyston admits the allegations set forth in Paragraph 8 of the Complaint.

9. Greyston denies knowledge and information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 9 of the Complaint.

## STATEMENT OF FACTS

10. Greyston admits that "Plaintiff was Defendant's Chief Executive Officer for a number of years and that in July 2002, Plaintiff informed Defendant's Board of Directors that he would be leaving Defendant's employ within the next year." Greyston denies the remaining allegations set forth in Paragraph 10 of the Complaint.

11. Greyston admits the allegations set forth in Paragraph 11 of the Complaint.

12. Greyston neither admits nor denies the truth of the allegations contained in Paragraph 12 of the Complaint because the terms of the agreement referenced in Paragraph 12 speak for themselves.

13. Greyston admits that it made the payments set forth in Paragraph 13 of the Complaint.

14. Greyston denies the allegations set forth in Paragraph 14 of the Complaint.

15. Greyston admits that "Plaintiff demanded payment of the remaining $78,000." Greyston denies the remaining allegations set forth in Paragraph 15 of the Complaint.

16. Greyston admits the allegations set forth in Paragraph 16 of the Complaint.

17. The allegations set forth in Paragraph 17 of the Complaint refer to the "Accord," the terms of which speak for themselves. Therefore no response is necessary.

18. Greyston denies the allegations set forth in Paragraph 18 of the Complaint.

19. Greyston denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 19 of the Complaint.

20. Greyston denies the allegations set forth in Paragraph 20 of the Complaint.

21. Greyston denies the allegations set forth in Paragraph 21 of the Complaint.

### FIRST COUNT
### (BREACH OF CONTRACT)

22. Greyston repeats and realleges its responses to the allegations contained in Paragraphs 1 through 21 as though fully set forth herein.

23. Greyston denies the allegations set forth in Paragraph 23 of the Complaint.

24. Greyston denies the allegations set forth in Paragraph 24 of the Complaint.

25. Greyston denies the allegations set forth in Paragraph 25 of the Complaint.

## SECOND COUNT
### (WAGE AND HOUR VIOLATION)

26. Greyston repeats and realleges its responses to the allegations contained in Paragraphs 1 through 25 as though fully set forth herein.

27. Greyston denies the allegations set forth in Paragraph 27 of the Complaint.

28. The allegations set forth in Paragraph 28 state legal conclusions and do not require a response.

29. Greyston denies the allegations set forth in Paragraph 29 of the Complaint.

30. Greyston denies the allegations set forth in Paragraph 30 of the Complaint.

## THIRD COUNT
### (FRAUD)

31. Greyston repeats and realleges its responses to the allegations contained in Paragraphs 1 though 30 as though fully set forth herein.

32. Greyston denies the allegations set forth in Paragraph 32 of the Complaint.

33. Greyston denies the allegations set forth in Paragraph 33 of the Complaint.

34. Greyston denies the allegations set forth in Paragraph 34 of the Complaint.

35. Greyston denies the allegations set forth in Paragraph 35 of the Complaint.

36. Greyston denies the allegations set forth in Paragraph 36 of the Complaint.

## FOURTH COUNT
### (BREACH OF THE IMPLIED COVENANT OF
### GOOD FAITH AND FAIR DEALING)

37. Greyston repeats and realleges its responses to the allegations contained in Paragraphs 1-36 as though fully set forth herein.

38. The allegations set forth in Paragraph 38 state legal conclusions and do not require a response.

39. Greyston denies the allegations set forth in Paragraph 39 of the Complaint.

40. Greyston denies the allegations set forth in Paragraph 40 of the Complaint.

## FIFTH COUNT
### (DECEPTIVE PRACTICES)

41. Greyston repeats and realleges its responses to the allegations contained in Paragraphs 1-40 as though fully set forth herein.

42. Greyston denies the allegations set forth in Paragraph 42 of the Complaint.

43. Greyston denies the allegations set forth in Paragraph 43 of the Complaint.

44. Greyston denies the allegations set forth in Paragraph 44 of the Complaint.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

45. Plaintiff's claims are barred by failure to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

46. Plaintiff's claims are barred based upon the doctrine of unclean hands.

### THIRD AFFIRMATIVE DEFENSE

47. If Plaintiff suffered any loss, injury, damage or detriment, the same was directly and proximately caused and contributed to by the breach, conduct, acts, omissions, activities, carelessness, recklessness, negligence and/or intentional misconduct of Plaintiff and not by Greyston.

## FOURTH AFFIRMATIVE DEFENSE

48. The damages complained of were the result of the intervening actions of others and were not proximately caused by the actions of omissions of Greyston.

## FIFTH AFFIRMATIVE DEFENSE

49. Any damages alleged can be attributed to several causes and the damages for this harm, if any, should be apportioned among the various causes according to the contribution of each cause to the harm sustained.

## SIXTH AFFIRMATIVE DEFENSE

50. Conditions precedent, which may have given rise to a duty to act or liability on the part of Greyston did not arrive.

## SEVENTH AFFIRMATIVE DEFENSE

51. Plaintiff's actions prevented Greyston's required performance, if any.

## EIGHTH AFFIRMATIVE DEFENSE

52. Plaintiff materially breached and/or failed to perform the promises and/or conditions, express and/or implied, of any contract between the parties, thereby preventing Greyston's performance and discharging any obligation on the part of Greyston.

## NINTH AFFIRMATIVE DEFENSE

53. The acts and omissions alleged in the Complaint were justified.

## TENTH AFFIRMATIVE DEFENSE

54. Plaintiff's claims against Greyston are barred by the doctrine of laches.

## ELEVENTH AFFIRMATIVE DEFENSE

55. Plaintiff's claims against Greyston are barred by the equitable defense of estoppel.

## TWELFTH AFFIRMATIVE DEFENSE

56. Plaintiff has waived any and all claims, rights and demands made by him in the Complaint.

## THIRTEENTH AFFIRMATIVE DEFENSE

57. Plaintiff acquiesced in and/or consented to the acts or omissions alleged in the Complaint.

## FOURTEENTH AFFIRMATIVE DEFENSE

58. Plaintiff has failed, in whole or in part, to mitigate his alleged damages.


**WHEREFORE**, Defendant Greyston Foundation, Inc., respectfully requests this Court to enter judgment as follows:

(a) Dismissing Plaintiff's Complaint in its entirety, with prejudice;

(b) Awarding Defendant his attorneys' fees and costs; and

(c) Awarding such other and further relief as this Court deems just and appropriate.

## COUNTERCLAIM

Defendant Greyston Foundation, Inc. by and through its attorneys Reed Smith LLP, by way of counterclaim against Plaintiff Charles G. Lief ("Lief"), states as follows:

### PRELIMINARY STATEMENT

1. Defendant Greyston brings this counterclaim against Lief to effectuate the principle, articulated in New York's Not-for-Profit Corporation Law, that officers of not-for-profit corporations be paid only that compensation that is "reasonable" and "commensurate with the services performed." Greyston's awards of compensation and benefits to Lief violated this principle because they were (a) objectively unreasonable; (b) the product of a process that permitted Lief improperly to influence both the amounts awarded to him; and (c) approved by the Greyston Board of Directors based on materially incomplete, inaccurate and misleading information.

2. Lief served as the Chief Executive Officer of Greyston from December 1994 to April 4, 2003 and was thus an officer and director of Greyston.

3. Lief exercised enormous power over the operation and governance of Greyston. Specifically, Lief had significant influence over the compensation of Greyston employees, including himself.

### RELEVANT STATUTORY AND JURISDICTIONAL PROVISIONS

4. The Not-for-Profit Corporation Law (the "N-PCL") governs New York not-for-profit corporations and the conduct of their officers and directors.

5. The N-PCL imposes restrictions on the compensation that a New York no-for-profit corporation may pay its officers and directors. Under N-PCL § 202(a)(12), compensation is unlawful if it is not "reasonable" or "commensurate with services

performed." N-PCL § 515(b) also provides that "[a] corporation may pay compensation in a <u>reasonable amount</u> to members, directors or officers for services rendered." (emphasis added).

6.   N-PCL § 720 authorizes commencement of an action against a director or officer of a not-for-profit corporation "[t]o compel the defendant to account for his official conduct" with respect to: (a) "[t]he neglect of, or failure to perform, or other violation of his duties in the management and disposition of corporate assets committed to his charge"; and (b) "the acquisition by himself, transfer to others, loss or waste of corporate assets due to any neglect of or failure to perform, or other violation of his duties." N-PCL § 720 also authorizes the commencement of an action "to set aside an unlawful conveyance, assignment or transfer of corporate assets where the transferee knew of its unlawfulness."

## FACTS

### The Agreement and Severance Agreement

7.   At the time Lief terminated his employment with Greyston, the parties entered into an informal "post-employment financial agreement" (the Agreement). The terms of the Agreement were set forth in a July 1, 2003 email (attached hereto as Exhibit A). The Agreement provided for additional compensation of $6000 per month to be provided to Lief for a period of 24 months beginning on July 1, 2003. The total amount to be paid to Lief in exchange for "consulting services" was $144,000.

8.   In November 2005, Lief executed a "Severance Agreement," which was essentially a re-negotiation of the original Agreement. The "Severance Agreement"

provided for compensation of $2500 per month beginning on March 1, 2006 and continuing until a total of $78,000 had been paid to Lief.

9. This Agreement, Severance Agreement and any payments made there under reflected a fundamental breakdown of corporate governance and were the product of numerous breaches of fiduciary duties owed to Greyston.

10. The sums awarded to Greyston under the Agreement and Severance Agreement were both objectively unreasonable and inconsistent with N-PCL § 202(a)(12), which authorizes the payment of only "reasonable compensation" that is "commensurate with services performed." Moreover, the Agreement and Severance Agreement were attributable to an improper and flawed methodology for determining Lief's compensation, as Lief maintained considerable control and discretion over the compensation process.

11. Moreover, the information provided to Directors who approved Lief's compensation awards and that led to the July 1, 2003 Agreement and the November 2005 Severance Agreement was inaccurate, incomplete and misleading.

12. As a result, the Board's approval of the Agreement was inconsistent with the N-PCL and it is thus null and void. Because it was also contrary to the N-PCL's restriction limiting compensation to "reasonable" amounts, it must be set aside as unlawful and <u>ultra vires</u>.

13. Likewise, because the information provided to the Board regarding the November 2005 Severance Agreement was incomplete, inaccurate and misleading, the Board's approval of that agreement is null and void under the N-PCL.

### The Honda Passport

14. On or about January 14, 2003, a 2000 Honda Passport (the "Vehicle") was purchased by the Greyston Bakery, a subsidiary of Greyston for the amount of $19,777.

15. This Vehicle was purchased for use by Lief in connection with is employment at Greyston.

16. When he left the company on April 4, 2003, Lief retained the Vehicle for his own personal use without compensation to Greyston.

17. From the time of Lief's resignation in April 2003 up until the present time, Greyston has continued to provide insurance for the Vehicle in the amount of $3141 per year.

18. The retention of the Vehicle represents a fundamental breach of fiduciary duty to Greyston.

19. Moreover, Lief has been unjustly enriched by his use of the Vehicle after his severance from Greyston.

### The Loans Taken By Lief on Behalf of Greyston Foundation

20. On or about May 27, 1998, Lief entered into an agreement for a preferred credit line with Hudson Valley Bank (the "1998 Credit Agreement"). Pursuant to the terms of the agreement, a $35,000 line of credit was established on behalf of Greyston Family Inn of Yonkers, a subsidiary of Greyston Foundation. Lief was also an officer of Greyston Family Inn and received compensation for his position. On or about January 31, 2001, the line of credit was increased to $75,000, with Greyston Foundation listed as the guarantor. The total interest paid by Greyston on this loan amounts to $25,064.

21. On or about October 12, 2000, Lief entered into an agreement for a revolving line of credit with Hudson Valley Bank (the "2000 Credit Agreement"). Pursuant to the terms of this agreement, Lief mortgaged Greyston Foundation property in exchange for a $250,000 line of credit. The total interest paid by Greyston on this loan amounts to $69,723.

22. On or about March 20, 2001, Lief entered into an agreement for a preferred credit line (the "March 2001 Credit Agreement") with Hudson Valley Bank. Pursuant the agreement, Lief borrowed the sum of $100,000 on behalf of Greyston Health Services, Inc. using Greyston Foundation property as collateral. Lief was also an officer of Greyston Health Services, Inc. and received compensation for his position. The total interest paid by Greyston on this loan amounts to $29,525.

23. On or about October 12, 2001, Lief entered into an loan agreement (the "October 2001 Loan Agreement") with Hudson Valley Bank on behalf of Greyston Foundation. Under the Loan Agreement, Greyston borrowed the sum of $585,000 from Hudson Valley Bank in order to make a loan to a subsidiary corporation, 104 Ashburton, LLC. Lief was also an officer of 104 Ashburton, LLC and received compensation for his position. The total interest paid by Greyston on this loan amounts to $195,104.

24. Lief took out these various loans to improve his financial position and enrich himself at the expense of the non-profit organizations on whose behalf he owed a duty of loyalty, fiduciary responsibility and good faith and fair dealing. Moreover, the information provided to Directors concerning the loans taken out by Lief was inaccurate, incomplete and misleading.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
(Imposition of a Constructive Trust and Restitution)

25. Greyston repeats and realleges the allegations set forth in paragraphs 1-24 of the Counterclaim as if fully set forth herein.

26. As an officer and director of Greyston, Lief was subject to the provisions of N-PCL §§202(a)(12) and 515(b).

27. Under N-PCL § 202(a)(12):

> Each corporation subject to any limitations provided in this chapter of any other statute of this state or its certificate of incorporation, shall have power in furtherance of its corporate purposes:
>
> \* \* \*
>
> To elect or appoint officers, employees and other agents of the corporation, define their duties, fix their <u>reasonable</u> compensation and the reasonable compensation of their directors, and to indemnify corporate personnel. <u>Such compensation shall be commensurate with services performed.</u>

(Emphasis added)

28. Under N-PCL § 515(b):

> A corporation may pay compensation in a reasonable amount to members, directors or officers for services rendered, and may make distribution of cash or property to members upon dissolution or final liquidation as permitted by this chapter.

29. The compensation and benefits received by Lief under the Agreement and Severance Agreement was neither "reasonable" nor "commensurate with the services performed."

30. To the extent Lief received compensation and benefits from Greyston that were not reasonable and not commensurate with the services he performed, the payment

to him of such compensation and benefits was unlawful and <u>ultra vires</u> under N-PCL §§202(a)(12) and 515(b).

31. To the extent Lief received unlawful, <u>ultra vires</u> payments because they were not reasonable compensation and not commensurate with the services he performed within the meaning of N-PCL §§202(a)(12) and 515(b), such payments to Lief by a not-for-profit corporation were against public policy.

32. To the extent Lief received unlawful, <u>ultra vires</u> payments because they were not reasonable compensation and not commensurate with the services he performed within the meaning of N-PCL §§202(a)(12) and 515(b), he has been unjustly enriched and cannot in equity and good conscience retain such payments.

33. As an officer and director of Greyston, Lief owed Greyston a fiduciary duty under N-PCL §717 and was in a relationship of confidence and trust with Greyston.

34. The Court should impose a constructive trust for the benefit of Greyston on all compensation received by Lief from Greyston to the extent such compensation was not reasonable and not commensurate with the services rendered within the meaning of N-PCL §§202(a)(12) and 515(b) in an amount to be determined at trial and Lief should be required to make restitution to Greyston of all funds as to which the Court imposes a constructive trust.

## SECOND CAUSE OF ACTION
(Payment Had and Received)

35. Greyston repeats and realleges the allegations set forth in paragraphs 1-34 of the Counterclaim as if fully set forth herein.

36. The compensation received by Lief from Greyston under the Agreement and the Severance Agreement was not reasonable and not commensurate with the services Lief performed under N-PCL §§202(a)(12) and 515(b).

37. To permit Lief to retain compensation and benefits that were in excess of a reasonable amount would be contrary to the laws and public policy of this State, which seek to limit private inurement by officers and directors of not-for-profit corporations.

38. Restitution of the unlawful compensation to Greyston is appropriate because N-PCL §§202(a)(12) and 515(b) are designed: (1) to protect not-for-profit corporation, such as Greyston from dissipation of their assets; (2) to assure that the assets of not-for-profit corporations are used for the benefit of their members or the public; and (3) to prohibit officers and directors from benefiting from private inurement and enriching themselves to the detriment of their corporations.

39. Accordingly, Lief should be ordered to return the unlawful compensation received by him, in an amount to be determined at trial, because he has been unjustly enriched and his retention of the fruits of the unlawful compensation is against equity, good conscience and public policy.

40. Additionally, Lief should be ordered to return the Vehicle to Greyston, as well as to make restitution for any depreciation and for the amounts of any insurance payments during his unauthorized use of the Vehicle.

### THIRD CAUSE OF ACTION
### (Violation of N-PCL § 716)

41. Greyston repeats and realleges the allegations set forth in paragraphs 1-40 of the Counterclaim as if fully set forth herein.

42. Under N-PCL § 716:

> <u>No loans,</u> other than through the purchase of bonds, debentures or similar obligations of the type customarily sold in public offerings, or through ordinary deposit of funds in a bank, <u>shall be made</u> by a [not-for-profit] corporation to its directors or officer, or <u>to any other corporation, firm, association or other entity in which one or more of its directors or officers are directors or officers or hold a substantial financial interest,</u> except a loan by one type B corporation to another type B corporation. <u>A loan made in violation of this section shall be a violation of the duty to the corporation of the directors or officers authorizing it or participating in it,</u> but the obligation of the borrower with respect to the loan shall not be affected thereby.

(Emphasis added).

43. As described above, in Paragraphs 20-24, Lief, while an officer and director of Greyston, caused several loans to be made to subsidiary corporations in which he was also an officer or director.

44. These transactions were loans within the meaning of N-PCL § 716.

45. Lief failed to pay any interest to Greyston with respect to the unlawful loans.

46. Greyston is entitled to judgment directing payment by Lief to Greyston of reasonable interest on each of the loans in violation of N-PCL § 716 for the respective periods in an amount to be determined at trial.

**WHEREFORE**, Defendant Greyston Foundation, Inc. respectfully requests the entry of judgment on its Counterclaims against Plaintiff Charles G. Lief as follows:

(a) Entering judgment in favor of Defendant Greyston and against Plaintiff Lief on all counts of the Counterclaim;

(b) Imposing a constructive trust for the benefit of Greyston on all compensation and benefits received by Lief from Greyston to the extent such compensation was unlawful by reason of being not reasonable and not commensurate with the services performed within the meaning of N-PCL §§202(a)(12) and 515(b) in an amount not less than $66,000, with the final amount to be determined at trial;

(c) Pursuant to N-PCL §720(a)(2), setting aside all payments of compensation and benefits by Greyston to Lief that were unlawful by reason of being not reasonable and not commensurate with the services performed within the meaning of N-PCL §§202(a)(12) and 515(b) and directing that Lief return such payments to Greyston in an amount not less than $66,000, with the final amount to be determined at trial;

(d) Directing Lief to return the Honda Passport Vehicle to Greyston and to make restitution for any depreciation and insurance payments by Greyston on the vehicle in an amount not less than $14,134.50, with the final amount to be determined at trial;

(e) Directing payment by Lief to Greyston of reasonable interest on all loans in violation of N-PCL §716 for the respective periods each was outstanding in an amount not less than $319,418, with the final amount to be determined at trial.

(f) Dismissing Plaintiff's Complaint, in its entirety, with prejudice;

(g) Awarding Greyston attorneys fees, court costs and expenses; an

  (h)  Awarding such other and further relief as the Court deems just and appropriate.

Dated: September 10, 2007       **REED SMITH LLP**

                By: *Jennifer A. Guidea*
                Daniel K. Winters (DW 1158)
                Jennifer A. Guidea (JG 4397)
                599 Lexington Avenue
                New York, NY 10022-7650
                Telephone: 212.521.5400
                Facsimile: 212.521.5450

                Attorneys for Defendant
                Greyston Foundation, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Answer was served this 10th day of September, 2007 upon the following counsel of record by the Court's electronic filing system:

Robert A. Pinel, Esq.
**FLAMM, BOROFF & BACINE, PC**
Westfield Corporate Center, Suite 310
4905 West Tilghman Street
Allentown, PA 18104
(610) 336-6800
(610) 336-0167(fax)
**Representing Plaintiff Charles G. Lief**

*Jennifer A. Guidea*
Jennifer A. Guidea